**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | | |
|---|---|---|
| **NATIONAL LABOR COLLEGE,** | ) | |
| **INCORPORATED** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. DKC-09cv1954** |
| | ) | **Judge Chasanow** |
| **THE HILLIER GROUP ARCHITECTURE,** | ) | |
| **NEW JERSEY, INC. , et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**HILLIER'S MOTION TO DISMISS**

The Plaintiff, the National Labor College, Incorporated ("the College" or "Owner"), by counsel, hereby responds in opposition to motion of Defendants The Hillier Group Architecture, New Jersey, Inc. and RMJM Hillier Inc. (collectively, "Hillier" or "the Architect") to dismiss Count I (Negligence), Count III (Breach of Contract) and Count V (Common Law Indemnity) in the College's Complaint. For the reasons set forth below, the motion should be denied.

**INTRODUCTION**

As discussed in the Complaint (specifically, ¶¶ 8-16), in 2003 the College entered into a contract with The Hillier Group Architecture, New Jersey, Inc., and Hillier International, Inc. (collectively, "Hillier") for the complete design of the Lane Kirkland Center, a multipurpose new construction project on the College's Silver Spring campus (the "Project"). Hillier thereafter engaged Co-Defendant TOLK, Inc. Consulting Engineers ("TOLK"), a specialty engineering firm, to design the mechanical, electrical and plumbing

1

("MEP") systems and also various life-safety and fire alarm systems that were essential for the educational use of the building by the building's users – in this case, the College's faculty, students, and the general public.

There are ultimately two separate agreements that the College claims to have been breached: the Owner/Architect Agreement ("Hillier-College agreement") for the overall design services, and the subordinate agreement between Hillier and TOLK ("Hillier-TOLK agreement") for the MEP design. The College is a third-party beneficiary of the latter agreement between Hillier and TOLK, as that agreement was entered into specifically to fulfill a portion of Hillier's obligations to the College under the Hillier-College agreement.

The College has brought suit against Hillier based on grounds of (1) negligence, (2) breach of contract, (3) contractual indemnity, and (4) common-law indemnity. As to Count I, the College's negligence claim, Hillier is seeking dismissal based on the Economic Loss Rule. Hillier's motion should be denied because, as discussed below, the Economic Loss Rule is inapplicable to the College's claims against Hillier in this case.

With regard to Counts III and V, the College's breach of contract and contractual indemnification claims, Hillier is seeking dismissal of Count III to the extent that it involves a contractual indemnification claim by the College, and of Count V, which is Hillier's common-law indemnification claim. With respect to contractual indemnification, in which the College is seeking to recover attorney's fees, consulting fees, and other costs incurred in defending claims brought by the contractors on the Project, Hillier claims that the conditions precedent for "contractual" indemnification (*e.g.,* liability imposed upon the College by a court) has not been satisfied. Furthermore, since there are express indemnification provisions in the contract, Hillier argues that the College's claim for "common law indemnification"

(Count V) should be dismissed. As discussed below, Hillier is mistaken on all of these points, and the motion should be denied.

## DISCUSSION

### A.     The Complaint Satisfies the Rule 12(b)(6) Standard

Hillier's motion to dismiss attacks the sufficiency of the facts pled in the College's complaint. In a 2007 case, the United States Supreme Court clarified the standard for pleading sufficient facts to overcome a 12(b)(6) motion –

> Factual allegations must be enough to raise a right to relief above the speculative level, see *5 C. Wright & A. Miller, Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed.2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, *e.g.*, *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (" Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely")."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).

The College's Complaint pleads specific and detailed facts alleging harm done to the College by Hillier to satisfy the "anti-speculation" requirements of *Twombly*. It is far more than a mere statement of facts that creates a suspicion. Hillier's argument is based, in part, on the accusation that the College's Complaint does not allege sufficient facts to support its claim for damages.

From paragraphs 27 through 47, the Complaint sets forth deficiency after deficiency in the design and administration of the Project on the part of Hillier and its agents, etc., and it lists the damages arising therefrom which amounted to negligence and breach of contract on

the part of Hillier. These listed acts include errors and omissions in the construction documents, the failure of Hillier and its consultants (*i.e.,* TOLK) to perform their obligations under the contract, the loss of use of the property due to delays and need for revisions and repairs, damage to the property due to improper engineering, designing, and other works of the designers.

As discussed further below, the indemnification provisions in the Hillier-College agreement (e.g., Article 12.2(c)) are actually very broad, and they do encompass the claims the College is making in this case. The Complaint sufficiently sets forth facts that trigger Hillier's obligation to pay damages to the College and to indemnify the College for attorney's fees and other costs incurred in defending various lawsuits brought against the College by the general contractor and its subcontractors. The Complaint paints a detailed picture of architectural and engineering incompetence and supports its factual allegations with specific instances of acts or omissions of the Architect and its subconsultant and, further, details how those acts harmed the College, and how the College has had to incur costs (including attorney's fees) as a result of Hillier's errors and omissions in designing and administering the Project.

**B.      The College's Negligence Claim Against Hillier Is Not Barred By the Economic Loss Doctrine, and is Actually Permitted by the Contract Between Hillier and the College**

Both Hillier and TOLK have invoked the Economic Loss Rule as a bar to the College's negligence claims. TOLK relies on the rule because it has no contractual privity with the College, but Hillier is not alleging and obviously cannot allege lack of privity with

the College.[1] Instead, Hillier argues the generic proposition that the College's damages resulting from Hillier's negligence are purely "economic" and therefore should not be recoverable under a tort theory, such as negligence, under the strict application of the rule.

In this case, the College is not alleging only economic damages, but is also arguing that Hillier's design created hazardous conditions that posed threats to life and safety, and required correction. For example, in paragraph 35 of the Complaint, the College alleges that the deficiencies, errors and omissions in the documents prepared by Hillier resulted in the rejection of completed work by local safety inspection authorities, substantial corrective work to the A/E Documents, and additional work by the contractors, in order to permit the Lane Kirkland Center to be occupied and used for its intended purposes. The errors and omissions by Hillier and its consultants included deficient design of fire alarm, fire prevention and fire exit systems (including the electronic door locks and releases), and deficient design of the elevators. These errors and omissions, separately and together, created immediate dangers that had to be corrected before the building could be occupied.

Hillier's invocation of the Economic Loss Rule as a defense is out of place here, where there is no question of privity between Hillier and the College. As explained by the Maryland Court of Appeals, the Rule is generally imposed to limit tort liability for "economic losses" when there is no "intimate nexus" between the parties: "As a general rule, when the failure to exercise due care creates a risk of economic loss only, and not the risk of personal injury, we have required an 'intimate nexus' between the parties as a condition to the imposition of tort liability." *Swinson v. Lords Landing Village Condominium,* 360 Md. 462, 477, 758 A.2d 1008, 1016 (Md. 2000) (citing *Jacques v. First Nat'l Bank,* 307 Md. 527,

---

[1] The College incorporates by reference the arguments presented in its response to TOLK's motion to dismiss, separately filed.

534-35, 515 A.2d 756, 759-60 (1986), and *Village of Cross Keys v. U.S. Gypsum,* 315 Md. 741, 753, 556 A.2d 1126, 1134 (1989)). In the present case, there is privity between the College and Hillier, so the Rule is inapplicable.

Hillier's argument is also misplaced because in this case, the contract between Hillier and the College actually imposes tort liability on Hillier in addition to contractual liability. To be specific, the Hillier-College agreement contains the following provisions that impose upon Hillier liability for Hillier's negligence (all with emphasis added):

- Article 2.6.1 confirms that negligence liability will survive the expiration or termination of the Hillier-College agreement: "Notwithstanding any provision to the contrary, the Architect at its own expense shall be required to provide remedial and any other relevant services to and for the Project in the event that defects of an architectural, engineering, and/or design nature develop by reason of the Architect's (or its consultant's) **negligence** or breach of this Agreement subsequent to the expiration or other termination of this Agreement."

- Article 12.2(a) requires Hillier to furnish the College with insurance coverage "for protection from claims arising out of performances or professional services caused by **negligent error, omission or act** for which the insured [Hillier] is legally liable...."

- Article 12.2(b) (described in detail later) requires Hillier to indemnify the Owner against any claim arising "as a result of any **negligent act or omission** of the Architect or any consultant of the Architect...."

- Article 12.3 imposes an elevated duty of care (also known as a "tort duty") on Hillier, stating: "The Architect represents, convenants, and agrees that all professional services provided by the Architect hereunder will be performed in a manner consistent with the **highest level of care and skill** ordinarily exercised by, and experience of, members of the architectural profession within the industry in the Washington, D.C. metropolitan area and shall be sufficiently detailed for use by the Owner, the Owner's Contractor, and the Owner's Representative to construct the Project."

- Article 12.5 confirms that Hillier will be liable in negligence as well as in contract: "Notwithstanding anything to the contrary contained in this Agreement, the Architect shall be liable for its own **negligence** or willful misconduct of its princip[als], employees, agents, and consultants."

In summary, Hillier's generic invocation of the Economic Loss Rule in this case simply ignores key provisions in the Hiller-College agreement that expressly acknowledge Hillier's liability to the College for the consequences of the negligent errors and omissions by Hillier and its consultants. To the extent that Hillier's motion in based on the application of the Economic Loss Rule, it should therefore be denied.

### C.    The College's Contractual and Common Law Indemnity Claims Are Not Barred

#### 1.    *The College's Common Law Indemnity Claim Is Not Pre-Empted by the Hillier-College Contract*

Hillier argues that because there are express indemnity provisions in the Hillier-College agreement that enumerate specific instances when Hillier would be liable to indemnify the College, Hillier cannot be held liable under an "implied" or common-law indemnification obligation for costs arising from Hillier's errors, omissions, and other misconduct. For example, the College is alleging that it suffered losses and damages from the design and administrative errors and omissions by Hillier and its consultants, and those damages included loss of use of the building (*i.e.,* delays to completion) and also claims by the general contractor for additional compensation.

Hillier cites *Ulico* and *Fidelity & Deposit Co. of Md. v. Bristol Steel & Iron Works, Inc.,* 722 F.2d 1160 (4th Cir. 1983), for the general proposition that where there is an express agreement regarding indemnity between parties, there is no need to resort to implied indemnification principles. Hillier asserts that the College's claims for costs and fees arising

from third party claims (*i.e.*, by the contractor and its subcontractors) are not covered by the "express" indemnification provisions unless a judgment was entered against the College by a court, and that because there is an express indemnification provision, there can be no implied or common-law indemnification this case.

The College is seeking indemnification from Hillier for those losses, as well as the recovery of attorney's fees and other costs incurred by the College in defending against the general contractor's claims. The fact that the College has, in good faith, settled the general contractor's claims does not deprive the College of its indemnification rights against Hillier. *See Ulico Cas. Co. v. Atlantic Contracting & Material Co.,* 822 A.2d 1257, 1267-68, 150 Md. App. 676, 692-94 (2003) (holding that an indemnitee was entitled under broad indemnity agreement to be paid for all costs incurred by in defending claims arising from the indemnitor's work, including claims settled in good faith).

As discussed below, the indemnification provisions in the Hillier-College agreement are much broader than Hillier describes them, and they are not limited only to instances where there has been liability imposed by a court based on a third-party claim. Hillier's motion must be denied because the Hillier-College agreement makes abundantly clear that the Architect is to indemnify the Owner in ***all*** claims and suits and to pay attorney's fees and expenses.

        **2.**       ***The Hillier-College Agreement's Indemnification Provisions Are Broad, and they Cover the Damages Sought by the College Here***

Article 12 of the agreement is titled, "Other Conditions or Services." All of the express indemnity provisions of the agreement are contained within several subparagraphs of that article: Article 12.2(a) concerns insurance for the Architect's professional liability; Article 12.2(b) which cover indemnity for attorneys fees and expenses "in the event" that the

Owner defends itself against a claim or has a liability imposed upon it by a court for the Architect's negligence; 12.2(c) which is the general indemnity provision covering all other circumstances; and, 12.5 which is a general provision regarding the Architect's liability for its own negligence.

The final sentences of Article 12.2(a) states:

The Architect agrees to cause its insurer to name the Owner and Sumner and Partners LLC as additional insureds in its comprehensive general liability insurance policy and to … include in the Architect's and each consultant's professional liability insurance policy the following provisions: 'The Company providing this insurance acknowledges that [Named Insured] had *agreed to defend and indemnify the Owner and the Owner's Representative from and against all claims and expenses arising out of error, omission, or negligent act of [Named Insured] in connection with professional services performed by [Named Insured] in connection with the Project.* Coverage is afforded under this policy for the contractual liability as set forth in the foregoing sentence'".  (Emphasis added).

Article 12.2(a) acknowledges that Hillier is agreeing to broadly "defend and indemnify" the College for "all claims and expenses" arising out of Hillier's errors, omissions or negligent acts. In addition to Article 12.2(a), as discussed above, the Hillier-College agreement also contained express requirements that Hillier indemnify the College in event the College "defends itself against a claim and liability imposed by court . . . as a result of any negligent act or omission of the Architect" (Article 12.2(b)), and also in the event of any other "claim of liability," "damage," "loss" or "injury" relating to "any negligent action or omission of the Architect" (Article 12.2(c)).

Article 12.2(b) states as follows, requiring Hillier to "defend' and indemnify the College in the event of any third-party "claim" or "liability imposed by a court" resulting from Hillier's errors and omissions:

> *In the event* that Owner defends itself against *a claim and liability imposed by a court upon the Owner with respect to such a claim as a result of any negligent act or omission of the Architect* or any consultant of the Architect for which the Architect or such consultant are determined by a court to be liable, then the *Owner shall be entitled to recover* from the Architect and from such consultant, *as one element of the Owner's damages*, the *costs of defending* such claim. Notwithstanding the provisions of the preceding sentence, if any liability is imposed by a court upon the Owner only in part as a result of any negligent act or omission for which the Architect or any of the consultants is determined by a court to be liable, then the Architect and such consultants shall pay its pro rata share of the costs of defending such suit based upon the percentage of fault attributable to the Architect and such consultants as determined by the court. Notwithstanding the foregoing obligations of the Architect's consultants, the Architect shall be primarily liable for any such claims and costs attributable to the fault of the Architect's consultants.

(Emphasis added).

Article 12.2(c) imposes even <u>broader</u> indemnity obligations on Hillier:

> Except for damages to or loss of property or bodily injury (including death) to persons arising from the gross negligence or willful misconduct of the Owner, its agents, consultants, representatives or employees, including the Owner's Representative, the *Architect shall and hereby does indemnify and save the Owner*, and its' agents, consultants, representatives, and employees, including the Owner's Representative, *harmless from all claims of liability and loss* because of injury (including death) to any person, *or damage to or loss of property or use thereof* that may occur as a result, directly or indirectly, *or any negligent action, or omission of the Architect* or the Architect's consultants or of their respective agents, consultants, representatives, or employees *to perform any of their obligations hereunder or to exercise due professional care* in accordance with the standards specified in Article 12.3 of this Agreement (*including, without limitation, errors or omissions in Construction Documents*). At its sole expense, *the Architect shall defend all suits or claims* alleging such injury, damages, or loss *and shall pay all attorneys' fees, court costs and other expenses incurred by the Owner*, the Architect or the Architect's consultants in connection therewith. **If any of the provisions of this Article are legally unenforceable, this Article shall remain in force to the extent allowable by law.** (Emphasis added).

Unlike Article 12.2(b), the indemnity provisions of 12.2(c) do not apply only when there has been a "liability imposed by a court," but instead they apply whenever there has

been a claim for "damage to or loss of property or use thereof that may occur as a result, directly or indirectly, or any negligent action" by Hillier or its consultants.

The final sentence of Article 12.2(c) makes clear that the parties intended that "implied" or "common law" indemnities were to be in force in the event that any provision of the written clause was to be found "legally unenforceable."

Article 12.2(d) required Hillier to "obtain the foregoing indemnity by express provisions for the benefit of the Owner in the Architect's contract with each of its consultants. Nothing herein is intended to be a limitation of the Architect's liability with respect to its obligations and duties under this Agreement." This provision required, among other things, that Hillier incorporate the same indemnity obligations in its contract with TOLK, Inc. (the mechanical, electrical and plumbing designer) as were contained in Article 12.

Article 12.3 contained the standard-of-care provisions to which Hillier was obligating itself and the consultants that Hillier employed specifically for the project, including TOLK. Under Article 12.3, Hillier agreed "that *all professional services* provided by the Architect hereunder will be performed in a manner consistent with *the highest level of care and skill ordinarily exercised by, and experience of, members of the architectural profession within the industry in the Washington, D.C. metropolitan area* and shall be sufficiently detailed for use by the Owner, the Owner's contractor and the Owner's Representative to construct the project. The completed Project shall conform to all applicable governmental regulations, statu[t]es, codes, and ordinances o[f] Maryland and any other government or regulatory authority having jurisdiction over the Project." (Emphasis added.) Thus, Hillier was promising that all design services furnished on the job would conform to the highest

standards of care; would result in a design that would be fully constructible by the College and its contractors; and would conform with all applicable laws, codes and standards. As alleged in the Complaint, Hillier failed on each of these grounds.

Article 12.5 provided, in addition to the indemnity provisions of the earlier clauses, that the Architect would be generally liable for its own errors and omissions: "Notwithstanding anything to the contrary contained in this Agreement, the Architect shall be liable for its own negligence or willful misconduct and for the negligence or willful misconduct of its princip[als], employees, agents, and consultants."

Despite all of these provisions requiring Hillier to broadly indemnify and otherwise be responsible to the College for all claims and expenses arising out Hillier's errors and omissions, Hillier reads these provisions very narrowly. In particular, Hillier reads Article 12.2(c) as applying only when there is a "personal injury, death or property damage suit," but in fact 12.2(c) applies to <u>all claims</u> of damage or loss, including "loss of property or use thereof that may occur as a result, directly or indirectly, or any negligent action, or omission of the Architect."

### 3. *The Indemnification Provisions of the Hillier-College Agreement Permit the College to Recover Attorneys' Fees and Other Costs Resulting from Hillier's Errors and Omissions*

As the Court of Appeals of Maryland recently said:

> Maryland utilizes the following rule of construction when interpreting contracts: "A recognized rule of construction in ascertaining the true meaning of a contract is that the contract must be construed in its entirety and, if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed."

*Cochran v. Norkunas* 398 Md. 1, 919 A.2d 700 Md. (2007) (citing *Sagner v. Glenangus Farms*, 234 Md. 156, 167, 198 A.2d 277, 283 (1964)).

Broad indemnity agreements are generally upheld in Maryland, as shown by the *Ulico* case cited above. *Ulico* involved a claim by a performance and payment bond surety for indemnification for attorneys' fees, costs and other expenses incurred in defending an action arising from a project on which its indemnitor was general contractor. 822 A.2d 1257, 1260, 150 Md. App. 676, 681-82. The claim arose because the contractor had failed to pay for repairs to the contractor's equipment, and the repairman filed a bond claim against the surety to seek payment. The surety investigated the claim and ultimately paid it. 822 A.2d at 1261, 150 Md. App. at 684. In the litigation against the contractor and the surety, the contractor argued that the underlying claim for repairs should not have been covered within the scope of the bond, and that therefore the indemnity obligation should not apply. The Court of Special Appeals disagreed, holding that the indemnity obligation was not limited to claims that were within the scope of the bond but extended to all claims that arose in connection with the bond, because of the broad terms of the indemnification agreement. The Court held that claims and expenses paid in good faith by the surety were indemnifiable, and it was not necessary for the surety to establish actual liability in order for the indemnification obligation to be triggered. 822 A.2d at 1267-68, 150 Md. App. 676, 695 (citing *Fidelity & Deposit Co. of Md. v. Bristol Steel & Iron Works, Inc.,* 722 F.2d 1160 (4th Cir. 1983).

Although Hillier relies on *Ulico* for the proposition that when there is an express indemnification agreement, it is unnecessary to resort to implied indemnity principles, but Hillier otherwise ignores the main principle for which the *Ulico* case stands, which is that when there is a broad indemnity obligation, it is not necessary for the indemnitee to establish

an underlying liability in order to trigger the obligation of the indemnitor to pay attorney's fees and other expenses.

Hillier argues that indemnity recovery by the College "is not permitted in the absence of the imposition of liability on Plaintiff by a court." Hillier suggests that only a final judgment or verdict by court can trigger the obligations of the clause. While it is technically true that there has been no final judgment entered against the College relating to the Project, there has been extensive litigation brought by the general contractor and its subcontractors. All of those cases involved mechanic's lien claims, which resulted in interlocutory orders permitting the liens to be imposed on the College's property and then "bonded off," whereby for each mechanic's lien claim the College was required to file a surety bond as substitute security for the lien claims. The mechanic's lien cases filed in this Court against the College included, for example, mechanic's lien claims brought by the masonry subcontractor, Baltimore Masonry, Inc. (Case No. 289581-V); by the drywall subcontractor, Clevenger Corp. (Case No. 282450-V); as well as by the general contractor, Grunley Walsh U.S., LLC (Case No. 284756-V). The general contractor, in particular, based its mechanic's lien claims in large part on allegations of defective design and mismanagement by Hillier and its consultants.

Because all of the aforementioned cases were eventually settled, Hillier argues that the contractual indemnity obligations do not apply. To suggest, as Hillier does, that the liabilities resulting from mechanic's lien claims are not "liabilities imposed by a court" is contrary to the clear intent of the indemnification clauses, which was to require Hillier to be responsible for the costs of litigation incurred by the College as the result of Hillier's errors and omissions. The essential meaning of Article 12.2(b) is to transfer to Hillier burden of

defending the Owner and holding the Owner harmless in the even that the Owner "defends itself against a claim" from a third party (such as the contractor) resulting from Hillier's errors and omission, the clause awards to the College, "as one element of the Owner's damages, the costs of defending such claim" (in 12.2(b)). That provision necessarily contemplates that Hillier's defense obligation arises when the claim is made, not only when the claim results in a judgment "imposed by a court."

Article 12.2(c)'s indemnity provision makes no reference at all to the indemnification obligation being triggered by a "liability imposed by a court," but rather it imposes on Hillier the obligation to defend all suits or claims alleging such injury, damages, or loss and shall pay all attorneys' fees, court costs and other expenses incurred by the Owner, the Architect or the Architect's consultants in connection therewith." Thus, even if Article 12.2(b) is somewhat unclear to the extent that it refers to a liability "imposed by a court," Article 12.2(c) clearly contemplates that the indemnification obligation arises when the claim – and thus the duty to defend the College – arises. Article 12.2(c) does not limit its coverage to instances where the claim has resulted in an imposition of liability by a court. Under Article 12.2(c), Hillier is obligated to "pay all attorneys' fees, court costs and other expenses incurred by the Owner" for claims arising out of Hillier's errors and omissions, including Hillier's failure fulfill its contractual obligations.

Hillier's motion acknowledges Article 12.2(c), but Hillier suggests that 12.2(c) is limited only to cases where there has been "personal injury" or "property damage." In fact, however, as discussed above 12.2(c) applies to "all claims of liability" including "loss of use" of property. The College has alleged in its Complaint that the College has not only incurred its own damages as a result of Hillier's errors and omissions (including delays to the

occupancy of the finished Lane Kirkland Center, diminished value in the building), but as discussed above the College has also defended claims brought by the general contractor and its subcontractors concerning delays and other damages resulting from Hillier's design and administrative errors and omissions. The College has had to incur attorney's fees, consulting fees, and other costs in the defense of those claims. Those costs fall squarely within the indemnification provisions of Article 12.2(c).

> **4.**    ***The College's Common Law Indemnity Claim is Permissible As an Alternative Ground of Relief Because it Was Preserved By the Hillier-College Agreement***

Hillier suggests that the only event that can trigger its contractual indemnity obligation is the imposition of liability by a court relating to Hillier's negligence, and that is indeed an indemnity obligation that arises under Article 12.2(b) of the Hillier-College agreement. As discussed above, the agreement is broader than that, however. Under Article 12.2(c) the agreement broadly requires Hillier to "indemnify and save the Owner and its agents, consultants, representatives, and employees, including the Owner's Representatives, harmless from all claims of liability and loss because of injury (including death) to any person, or damage or loss of property or use thereof that may occur as a result, directly or indirectly, o[f] any negligent action or omission of the Architect or the Architect's consultants or their respective agents . . . to perform any of their obligations hereunder or to exercise due professional care." Thus, the indemnity obligation under the Hillier-College agreement is triggered by an "injury" or a "loss" – including the loss of use of the completed building – arising from the Architect's negligent acts or omissions.

With regard to the College's alternative common-law indemnification claim, Hillier claims that common law indemnity is not available to the College because the "express

indemnity provisions" of the Hillier-College agreement outweigh any claim for common law indemnity.

Common law indemnity has not been replaced with the contract language. The contract merely establishes common law indemnity within it and *expands* upon the common law rights ordinarily afforded to the Owner to include fees and expenses to include attorneys' fees and expenses.

Hillier argues that the College's "common law indemnity" claim should be dismissed because there is no need for "implied" indemnification provisions where there has been an express indemnity agreement. It is correct that the two separate counts in the Complaint somewhat overlap, but that duplication is not impermissible. The Federal Rules, specifically Rule 8, permit pleading alternative theories for the same relief. Moreover, as discussed below, the Hillier-College agreement by its own terms leaves in place whatever common-law rights existed between the parties, and those rights are not abrogated by the written agreement.

Under the common law, indemnity was an action based upon fairness and to prevent unjust enrichment of the tortfeasor at the expense of innocent, but contractually related parties. It ordinarily did not include provisions for attorneys' fees and expenses. Because of the increasing costs of litigation in the past several decades, and the unfairness of innocent parties paying those legal fees and expenses to defend actions for the negligence of the tortfeasor, many contracting parties agreed to indemnity for attorneys' fees and expenses as additions to common law indemnity. The Hillier-College agreement between the College and Hillier makes very plain that the indemnity clauses of Articles 12.2(b) and (c) are *in addition to* the common law indemnity afforded to the Owner, and that parties agreed that those basic

obligations would survive any attack on the written document. Specifically, Article 12.2(c) states, at the end: "If any of the provisions of this Article [*i.e.,* Article 12.2] are legally unenforceable, this Article shall remain in effect to the extent allowable by law."

In addition to Article 12.2(c), the Owner/Architect agreement also contains a catch-all provision in Article 12.5, which states –

> 12.5 ***Notwithstanding anything to the contrary contained in this Agreement***, the Architect ***shall*** be liable for its own negligence or willful misconduct and for the negligence or willful misconduct of its principles, employees, agents, and consultants. (Emphasis added).

These provisions make clear there was never any intent by the parties to replace common law indemnity with a more limited contractual one.

The fact that the parties to the Agreement chose to make certain rights and obligations of indemnity explicit does not mean that they intended to extinguish the College's common law rights. Courts have held generally that indemnity clauses are to be viewed realistically, recognizing the intent of the parties to allocate certain losses arising out of performance of the contract. *Jones v. Strom Constr.,* 84 Wash.2d 518, 527 P.2d 1115, 1117 (1974) (en banc). It would be unrealistic to assume, in the light of the other salient parts of the Agreement, that the language of 12.2(b) was intended to preclude liability for losses caused by the Architect's negligence where no liability and judgment had been imposed by a court; or that 12.2(c) was meant to preclude common law indemnity. It is possible for contracting parties to show their intent to preclude common law indemnification altogether, however there is absolutely no indication of such intent here. The indemnity provision protects the Owner from liability for claims for property damage, other losses, personal injury, and other negligence as a result of Hillier's acts. It provides the Owner greater protection than it would have under principles of

common law but it does not suggest the intent to exonerate Hillier from other losses suffered by the College as a result of Hillier's negligence.

The College therefore should not be precluded from maintaining a claim for common law indemnity. In interpreting the scope of an indemnification clause, the court must consider the four corners of the agreement and its surrounding circumstances. *Deskiewicz v. Zenith Radio Corp.,* 385 Pa. Super. 374, 561 A.2d 33 (1989). The number of instances and the weight of the language in the Articles which mandate full and complete indemnity for all acts of negligence of the Architect far outweigh any notions to the contrary.

Cases cited in Hillier's Motion including *Ulico Casualty Co. v. Atlantic Contracting & Material Co*., 150 Md. App. 676, 822 A.2d 1257 (2003); and *Fidelity & Deposit Co. v. Bristol Steel and Iron Works, Inc.*, 722 F.2d 1160 (4th Cir. 1983), are both cases involving surety disputes with contractors rather than Owner/Architect indemnity. In both cases, however, the courts found that the broad contractual language had specific requirements for indemnity which were clearly spelled out in the contracts and which widely deviated from common law principles. In the present case, in contrast, the contractual language *expands* upon common law indemnity by adding a provision for attorneys' fees, which is not a part of traditional common law. Every other part of the Hillier-College agreement merely restates common law indemnity principles; *e.g.,* "[Architect] had agreed to defend and indemnify …against all claims and expenses arising out of error, omission, or negligent acts of [Architect]." (Hillier-College agreement at ¶ 12.2(a)); and "…the Architect shall and hereby does indemnify and save the Owner…harmless from all claims of liability and loss… (including, without limitation, errors or omissions in the Construction Documents)" (*id.,* at 12.2(c)); and, "Notwithstanding anything to the contrary contained in this Agreement, the

Architect shall be liable for its own negligence…" (id., at 12.5). The language evidences no limitation upon the common law.

The College's claim for common-law indemnity is therefore appropriate both as an alternative to the express indemnity provisions of the Hillier-College agreement, and also as a separate ground for relief, since the College's common-law rights were preserved by the Hillier-College agreement. Hillier's motion to dismiss Count V (Common Law Indemnity) should therefore be denied.

## CONCLUSION

To summarize, Hillier's motion to dismiss the College's negligence claim against Hillier pursuant to the Economic Loss Rule should be denied, because the College has alleged that Hillier's defective design of the Project created hazardous conditions that posed serious threats to persons an property and required correction before the completed Lane Kirkland Center could be occupied. Hillier, moreover, is not only in privity with the College, but Hillier's agreement with the College expressly preserved Hillier's negligence liability to the College.

With respect to contractual indemnification, as discussed above Hillier's motion is premised on the notion that the College's indemnification rights against Hillier can be triggered only by a finding of liability by a court. The indemnification provisions of Article 12.2 are, in fact, much broader and they apply to all claims made that relate to errors and omissions in Hillier's work. Article 12.2(c) specifically obligates Hillier to pay the College's attorney's fees and other costs incurred in defending such claims.

Hillier asks that the College's common-law indemnity claim be dismissed because the College's claims are covered by an express indemnity agreement, so that resort to "implied" obligations is not appropriate. As discussed above, however, the College's common-law

indemnity claim is permissible as an alternative theory of recovery. Further, rather than being superseded by the express agreement, the College's common-law rights were actually preserved by the agreement.

For all these reasons, Hillier's motion to dismiss should be denied.

Dated: September 21, 2009

Respectfully Submitted,

/s/ Herman M. Braude

_____
Herman M. Braude, Esq.
Federal Bar No.: 02573
Joseph C. Garland
Federal Bar No.: 06551
Braude & Margulies, P.C.
1200 Potomac Street, N.W.
Washington, D.C. 20007
Tel (202) 471-5400
Fax (202) 471-5404
hbraude@braudemargulies.com
Attorney for Plaintiff

**ORAL ARGUMENT REQUESTED**

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was served by electronic mail on September 21, 2009, upon the following:

James F. Lee, Jr.
Joseph M. Gesker, Jr.
Lee McShane, PC
1211 Connecticut Avenue, N.W.
Suite 425
Washington, D.C. 20036
Attorneys for TOLK, Inc.

Patrick J. Attridge
King & Attridge
39 West Montgomery Avenue
Rockville, MD 20850
Attorney for RMJM Hillier, Inc.

/s/ Herman M. Braude