IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATIONAL LABOR COLLEGE, INC.           :

                               :

    v.                    :       Civil Action No. DKC 09-1954

                               :

THE HILLIER GROUP ARCHITECTURE
NEW JERSEY, INC., et al.    :

**MEMORANDUM OPINION**

Two motions to dismiss are pending and ready for resolution in this breach of contract case. The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant Hillier's motion to dismiss will be granted in part and denied in part and Defendant Tolk's motion to dismiss will be granted.

## I.  Background

This case involves the planning and construction of a new building at the National Labor College in Silver Spring, Maryland. Plaintiff, the National Labor College, hired Defendant Hillier Group Architecture New Jersey, Inc. and RMJM, Inc. (collectively "Hillier") to create initial architectural and engineering designs and secure permits for a new building. Defendant TOLK, Inc. ("Tolk") served as a sub-consultant. Plaintiff alleges in its complaint that Defendants breached their contracts and did not meet applicable professional standards. Defendants counter that they met all required

standards and did not breach any contract. Both have now moved to dismiss. (Papers 13 and 14).

### A.   Factual Background

Plaintiff and Hillier entered into a written contract ("Agreement" at Paper 1, Attach. 1) on August 30, 2003. (Paper 1 ¶ 8). The Agreement concerned a new building to be known as the Lane Kirkland Center ("LKC"), which was to be a two-story multipurpose building. It would contain classroom facilities, kitchen and dining facilities, conference rooms, and retail areas for use by the faculty, students and public. (*Id.* ¶ 6).

The Agreement is an American Institute of Architects Form B141 Standard Owner-Architect Agreement (1987 Edition) with several modifications, including a heightened standard of care. (*Id.* ¶ 9). In addition to specifying the applicable standard of care, the Agreement required Hillier to assume a number of duties. Hillier and Plaintiff agreed that the budget for the completed building would be $13,000,000.00. (*Id.* ¶ 10).

Also in 2003, Hillier contracted with Tolk for the mechanical, electrical, and plumbing ("MEP") design of the LKC. (*Id.* ¶ 14). As Hillier's sub-consultant, Tolk was required to provide the MEP drawings and specifications that would be included in the architecture and engineering documents ("A/E Documents"). (*Id.* ¶ 15).

In January 2004, Hillier delivered a "permit set" of documents to Montgomery County for permit approvals. (Paper 1 ¶ 17). A month later, Plaintiff submitted the plans for a "peer review" by other architectural firms in the D.C. area; the reviewers found a number of problems with the Hillier design and Tolk's MEP design. (*Id.* ¶ 18). Comments by the reviewers were given to Hillier and Tolk, who made changes to the plans to address some of the concerns. (*Id.* ¶ 19). In mid-April 2004, Hillier informed Plaintiff that it had adequately responded to the peer comments, that the A/E documents were ready for prospective contractors to scope and bid on, and that a four-week bidding period would be adequate. (*Id.* ¶ 20). Hillier also told Plaintiff that bidding and award could be completed by the beginning of June, which would allow the LKC to be finished by Labor Day 2005 (15 months later). (*Id.*). Relying on Defendant Hillier's assertions, Plaintiff submitted the A/E Documents for bidding by general contractors over the objections of the construction manager for the LKC project. (*Id.* ¶ 21). Plaintiff received initial bids in late May 2004, but all bids significantly exceeded Plaintiff's target budget of $13 million. (*Id.* ¶ 22).

Because the bids all exceeded the target budget, Plaintiff entered into negotiations during the summer with several

contractors. (*Id*. ¶ 23). Ultimately, Plaintiff awarded the contract to build the LKC to Grunley Walsh U.S., LLC ("Grunley Walsh") for a base contract price of $17.4 million. (*Id*.). According to the terms of that contract, the LKC was to be substantially complete within 450 days of the Notice to Proceed with construction, which was issued on September 14, 2004. (*Id*. ¶¶ 24-25). Thus, under the contract's schedule, Grunley Walsh should have completed the LKC no later than December 8, 2005. (*Id*. ¶ 25).

Unfortunately, "numerous delays" and "inefficiencies" ensued after Plaintiff told Grunley Walsh to proceed. In the end, Grunley Walsh did not complete the project until October 2006, about ten months after the date by which it was supposed to be "substantially complete." (*Id*. ¶¶ 26, 32).

Plaintiff catalogs a series of design defects and problems that occurred during construction. These problems included an incomplete set of A/E Documents, documents that were insufficiently detailed, and long response times from Hillier. (*Id*. ¶¶ 29, 31, 37). The incomplete A/E Documents led to a number of Requests for Information ("RFIs") from the construction contractors during construction. (*Id*. ¶ 29). For instance, the A/E Documents failed to "provide detail adequate for the timely and complete preparation of shop drawings by

[Grunley Walsh] and its subcontractors" and in "numerous instances, the A/E Documents were in conflict with each other" or "contained incorrect specifications of equipment and/or materials to be used." (*Id.* ¶ 31).

The A/E Documents also failed to comply with all government codes, delaying the issuance of necessary building permits. (*Id.* ¶ 30-31). Local inspection authorities required substantial corrective work to the A/E Documents and additional work by contractors before they would issue permits to the LKC. (*Id.* ¶ 35). Because of various deficiencies discovered during construction, Hillier's design team needed to issue over 300 additional sketches. (*Id.* ¶ 45).

Plaintiff alleges that Hillier and Tolk made matters worse by their failure to address design issues as they arose in an adequate and timely fashion. According to Plaintiff, Hillier and Tolk were both "tardy in responding to RFIs submitted by the general contractor . . . and the information provided by [Defendants] inadequately addressed issues that arose." (*Id.* ¶ 37). Hillier also closed its D.C. office during the construction, and two of the "Project Architects" left the firm. (*Id.* ¶¶ 39 & 40). The new Project Architect was based in New Jersey and was not a licensed architect in Maryland. (*Id.* ¶ 41).

**B.    Procedural Background**

Plaintiff filed its complaint on July 27, 2009.  (Paper 1).
It alleges five counts: (I) negligence against Hillier; (II)
negligence against Tolk; (III) breach of contract against
Hillier; (IV) breach of contract against Tolk (under a third
party beneficiary theory); and (V) common law indemnification
against Hillier.  After the court granted them an extension of
time, both Defendants submitted separate motions to dismiss on
September 8, 2009.  (Papers 13 & 14).  The motions are now fully
briefed.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P.
12(b)(6) is to test the sufficiency of the plaintiff's
complaint.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243
(4th Cir. 1999).  Except in certain specified cases, a
plaintiff's complaint need only satisfy the "simplified pleading
standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S.
506, 513 (2002), which requires a "short and plain statement of
the claim showing that the pleader is entitled to relief."
Fed.R.Civ.P. 8(a)(2).  Nevertheless, "Rule 8(a)(2) still
requires a 'showing,' rather than a blanket assertion, of
entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S.
544, 555 n.3 (2007).  That showing must consist of more than "a

formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

At this stage, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

## III. Hillier's Motion to Dismiss

Plaintiff has brought separate claims against Hillier for negligence and breach of contract, although the basis for each is substantially the same. As long ago as 1969, courts have recognized the significant overlap between the causes of action in professional malpractice cases:

> It would appear that in recent years the trend has been for courts, in applying limitations to professional malpractice cases, not to become too concerned as to whether the action is grounded in contract or tort, but rather to focus attention on the fact that it is the failure to perform one's professional duties with reasonable skill and diligence which gives rise to the cause of action, whether it be a negligent breach of contract or otherwise.

*Mumford v. Staton, Whaley and Price*, 254 Md. 697, 714 (1969). Twenty years later, the Maryland Court of Special Appeals explained:

> The defective performance of a contractual undertaking may give rise to an action both in tort or in contract. Recovery for malpractice or professional negligence against a physician is allowed only:
>
> > [W]here there is a relationship of doctor and patient as a result of a contract, express or implied, that the doctor will treat the patient with proper professional skill and the patient will pay for

> such treatment, and there has been
> a breach of professional duty to
> the patient.
>
> While the underlying relationship is
> contractual, "malpractice is predicated upon
> the failure to exercise requisite medical
> skill and, being tortious in nature, general
> rules of negligence usually apply in
> determining liability." In *Benson*, the
> Court of Appeals held that although an
> action for malpractice can be based on both
> contract and tort theories, for purposes of
> venue the suit shall be considered an action
> ex delicto instead of ex contractu.
>
> Likewise, actions for professional
> malpractice against an attorney have been
> held to allege the negligent breach of a
> contractual duty. Such suits may be brought
> in either contract or tort.

*Miller v. Schaefer*, 80 Md.App. 60, 74-75 (1989) (citations omitted).

### A. Negligence

In count I, Plaintiff alleges that Defendant had a duty to produce documents and specifications that would meet the ordinary standard of care for architects and engineers. (Paper 1 ¶ 49). Plaintiff contends that Hillier did not possess or use the degree of skill, care, judgment or expertise required, and therefore breached that duty of care. (*Id.* ¶ 51). Because of Hiller's errors and omissions, Plaintiff says, the A/E Documents violated code requirements and posed an imminent danger to the life and safety of users, students and other occupants. (*Id.*

¶ 53). Plaintiff states that Hillier's negligent designs and management damaged Plaintiff and caused it to incur additional costs. (*Id.* ¶¶ 55-56).

Hillier cites several cases decided by the Court of Appeals of Maryland, as well as this court, to argue that Plaintiff has only suffered "economic loss" and cannot collect for negligence. Hillier contends that Plaintiff's alleged damages are economic losses that are not recoverable in tort, such as delay damages, costs to correct deficient design, costs to correct mechanical systems, etc. Furthermore, Hillier argues that Plaintiff's claim does not fit into the exception created by the Court of Appeals that allows plaintiffs to recover "in tort to correct construction defects [that] created a serious risk of injury." (Paper 14, at 7 (quoting *A.J. Decoster v. Westinghouse Elec. Corp.*, 333 Md. 245, 251 (1994))).

Plaintiff responds with three main arguments. (Papers 15 & 16). First, Plaintiff argues that the invocation of the economic loss rule is misplaced because there is "no question of privity between Hillier and the College." (*Id.*). Plaintiff observes that "when the failure to exercise due care creates a risk of economic loss only, and not the risk of personal injury," Maryland courts "have required an 'intimate nexus' between the parties as a condition to the imposition of tort

liability." (Paper 15, at 5 (quoting *Swinson v. Lords Landing Condominium*, 360 Md. 462, 477 (2000))). Second, Plaintiff argues that the complaint alleges more than economic damages; it also alleges that Hillier's design created hazardous conditions that posed threats to life and safety and required correction. (Paper 15, at 5; Paper 16, at 6-8). Plaintiff cites in support a number of deficiencies, errors, and omissions in documents that Hillier and Tolk prepared that led local safety inspection authorities to reject completed work. (*Id.*). Finally, Plaintiff argues that the Agreement imposes tort liability on Hillier in addition to contractual liability.

To prove negligence under Maryland law, a plaintiff must prove that: (1) the defendant was under a duty to protect the plaintiff from injury; (2) the defendant breached that duty; (3) the plaintiff suffered actual injury or loss; and (4) the loss or injury proximately resulted from the defendant's breach of the duty. *Valentine v. On Target, Inc.*, 353 Md. 544, 549 (1999).

In Maryland, the existence of a legal duty is a question of law to be decided by the court. *Doe v. Pharmacia & Upjohn Co., Inc.*, 388 Md. 407, 414 (2005). In the absence of a duty of care, there can be no liability in negligence. *Walpert, Smullian & Blumenthal, P.A. v. Katz, et al.*, 361 Md. 645, 655

(1998). "[I]f the risk created by negligent conduct is no greater than one of economic loss, generally no tort duty will be found absent a showing of privity or its equivalent." *Jacques v. First Nat'l Bank*, 307 Md. 527, 537 (1986).

The parties have focused narrowly on the economic loss rule and the discussion of privity in that context. What they overlook is that "[a] contractual obligation, by itself, does not create a tort duty. Instead, the duty giving rise to a tort action must have some independent basis." *Mesmer v. Md. Auto. Ins. Fund*, 353 Md. 241, 253 (1999). Thus, the real question here is whether Hiller was bound by any duty independent of the contract. The complaint alleges that Hillier had a duty to meet the ordinary standard of care required of architects and engineers, but does not cite to any source of that duty outside of the contract. On the other hand, Plaintiff does allege that it engaged Hillier to perform professional services, normally giving rise to the duty. In any event, Defendant's argument that the economic loss rule bars this claim is misplaced. *See City of Richmond v. Madison Mgmt. Group, Inc.*, 918 F.2d 438, 446 (4th Cir. 1990) ("[I]f, when the surface is scratched, it appears that the defendant has breached a duty imposed by law, not by contract, the economic loss rule should not apply."). The motion to dismiss the negligence count will be denied at this

time.  This claim, as noted, appears to duplicate the portion of the breach of contract claim in count III that Hillier does not challenge.

**B.  Contractual Indemnity**

In count III, Plaintiff alleges, among other things, that Hillier breached Article 12.2, which defines Hillier's indemnity obligations.  (Paper 1 ¶ 70).  Hillier argues that Plaintiff has failed to allege facts that would trigger the indemnity provisions.  Accordingly, Hillier maintains that the costs and expenses paid by Plaintiff in connection with certain underlying contractor claims are not recoverable under Article 12.2. (Paper 14, at 14).

Under Maryland law, an express indemnity agreement "must be construed in accordance with the traditional rules of contract interpretation."  *Thomas v. Capital Med. Mgmt. Assocs., LLC*  189 Md.App.  439,  468  (2009)  (quoting  *Ulico  Cas.  Co.  v.  Atl. Contracting & Material Co., Inc.*, 150 Md.App. 676, 692 (2003)). Courts determine the meaning of contract language by "adhering to the principle of the objective interpretation of contracts." *Ace  Am.  Ins.  Co.  v.  Ascend  One  Corp.*, 50 F.Supp.2d 789, 794 (D.Md. 2008) (citing *ABC Imaging of Wash., Inc. v. The Travelers Indem. Co. of Am.*, 150 Md.App. 390, 396 (2003)).  Under the objective theory of contracts,

13

> a court is to determine from the language of the agreement, what a reasonable person in the position of the parties would have understood the contract to mean at the time the contract was entered into; when the language of the contract is plain and unambiguous, there is no room for construction as the courts will presume that the parties meant what they expressed.

*Mathis v. Hargrove*, 166 Md.App. 286, 318-19 (2005). A court "construing an agreement under [the objective theory] must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." *Dennis v. Fire & Police Employees' Ret. Sys.*, 390 Md. 639, 656 (2006) (*quoting Gen. Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261 (1985)).

Hillier argues that the Agreement includes express terms, namely sections 12.2(b) and 12.2(c),[1] that govern when Plaintiff is entitled to recover from Hillier its costs and expenses of defending a claim brought by a third party. Hillier states that no court has imposed liability upon Plaintiff and, thus, Plaintiff cannot take advantage of 12.2(b). In addition,

---

[1] Article 12.2 of the Agreement lays out the indemnification requirements in the relationship between Defendant Hillier and Plaintiff. (Paragraph 12.2(a) discusses the types of insurance coverage that Defendant Hillier will purchase and is not relevant in this matter.)

Hillier maintains that Plaintiff has not alleged any personal injury or property damage and, as such, 12.2(c) does not apply.

Plaintiff disagrees with Hillier's interpretation of the provisions of the Agreement, and argues that there has been extensive litigation to date regarding claims that arose due to Hillier's negligence. (Paper 15, at 14). It also argues that Defendant overlooks the fact that 12.2(c) applies when a loss of use has been alleged, as is the case here, and that 12.2(c) does not refer to indemnification being triggered by a "liability imposed by a court."

Paragraph 12.2(b) discusses the implications of any court-imposed liabilities on Plaintiff. It says that:

> In the event that Owner defends itself against a claim and liability imposed by a court upon the Owner with respect to such a claim as a result of any negligent act or omission of the Architect or any consultant . . . then the Owner shall be entitled to recover from the Architect and from such consultant, as one element of the Owner's damages, the costs of defending such claim. . . . [I]f any liability is imposed by a court upon the Owner only in part . . . then the Architect . . . shall pay its pro rata share of the cost of defending such suit . . . . Notwithstanding the foregoing obligations of the Architect's consultants, the Architect shall be primary liability for any such claims and costs attributable to the fault of the Architect's consultants.

A reasonable person would understand this paragraph to mean that Plaintiff may recover the costs of defending a claim if

Hillier commits a negligent act or omission and a court imposes a liability upon Plaintiff because of that negligence. *See, e.g.*, *State-Planters' Bank & Trust Co. v. First Nat'l Bank*, 76 F.2d 527, 532 (4th Cir. 1935) ("Where the contract is not a mere contract to indemnify and save harmless, but a contract to save from a legal liability or claim, the legal liability incurred and not the actual damage sustained is the measure of damage."). Here, there has been no final judgment imposed against Plaintiff relating to the project at issue, although there has been extensive litigation. Therefore, there is no valid claim for indemnity under Article 12.2(b).

Plaintiff's opposition lists, for the first time, certain mechanic's lien claims brought by the general contractor and certain subcontractors. (Paper 15, at 14). These factual allegations are not properly considered, as a memorandum of law opposing a motion to dismiss is not the proper means to supplement the complaint. Even if Plaintiff had properly alleged these facts, however, they would not save Plaintiff's claims, as even Plaintiff concedes that all of the underlying cases were eventually settled. (*Id.* at 14). Despite the fact that courts generally encourage parties to settle, this Article by its terms applies only when a court has imposed a liability. Therefore, Plaintiff cannot take advantage of its promises. *See*

*Pulte Home Corp. v. Parex, Inc.*, 403 Md. 367, 382 (2008) ("The nature of the indemnity will determine . . . when a right of action accrues.").

Paragraph 12.2(c) provides Plaintiff with a broader form of indemnification with respect to any claims for personal injury, property damages, or loss of use of property. The relevant language in that section reads:

> [T]he Architect shall and hereby does indemnify and save the Owner and its' [sic] agents, consultants, representatives, and employees . . . harmless from all claims of liability and loss because of injury (including death) to any person, or damage to or loss of property or use thereof that may occur as a result, directly or indirectly or[2] any negligent action, or omission of the Architect.

Properly read, this provision is triggered if two conditions are met: (1) Hillier's negligence causes something within the aforementioned categories of harm to occur (*i.e.*, personal injury and property damage); and (2) a third party brings a claim against Plaintiff.[3] If both of these conditions were met,

---

[2] Although neither party discusses the issue, this "or" appears out of place. Lacking any plausible purpose, the court treats it as a scrivener's error herein.

[3] Hillier notes that Plaintiff did not ask it to defend any suit and did not give notice of any third-party claims until November 2008. (Paper 20, at 10). Unless an express term requires it, notice is not required for indemnity. *See Tillman*

Hillier would be required to defend against the claim "at its sole expense."

Plaintiff argues that it has defended claims brought by general contractors and subcontractors concerning delays and other damages resulting from Hillier's negligent acts and omissions, and that these costs – including attorney's fees – fall within the indemnification provisions of 12.2(c). The complaint generally explains that Plaintiff was forced to "defend various contractor and subcontractor claims." (Paper 1, at 10). It also references a lawsuit filed by Grunley Walsh that it alleges triggered the indemnity provisions. (*Id.* at 15). Yet Plaintiff fails to plead the nature of these underlying lawsuits, and contrary to Plaintiff's contentions, Article 12.2(c) does not apply to all forms of liability. That approach is overbroad in that it ignores the subsequent qualifying clause beginning with "because of." As the court is unable to discern from the face of the complaint whether the lawsuits pertain to any types of recoverable injury, these lawsuits do not implicate Article 12.2(c).

Plaintiff also cannot rely on its own loss of use to invoke Article 12.2(c). The provision applies to third party, not

*v. Wheaton-Haven Recreation Ass'n, Inc.*, 580 F.2d 1222, 1230 (4th Cir. 1978).

first party, claims. *Cf. Levin v. Steptodont, Inc.*, 34 F.App'x. 65, 76 (4th Cir. 2002) (observing, under Maryland law, that "garden variety indemnification clause" could not be reasonably read to cover expenses of first party litigation). Thus, the motion to dismiss Plaintiff's contractual indemnity claims must be granted.

### C. Common Law Indemnity

Plaintiff alleges that the Agreement expressly states that Hillier will be liable for its own negligence or willful misconduct or the negligence or willful misconduct of its consultants. Plaintiff therefore argues that Hillier has a common law duty to indemnify and hold it harmless for any damages, claims, liabilities, costs and expenses, including attorney's fees, arising out of Hillier's work on the project.

Hillier responds that the express indemnity provisions in the Agreement preempt Plaintiff's claim for common law indemnity (count V). Hillier argues that "under Maryland law [], resort to implied indemnity principles is improper when an express indemnification contract exists." (Paper 14, at 10). Because the Agreement contains many sections delineating when Hillier must indemnify Plaintiff, Plaintiff cannot bring a claim for common-law indemnity. Hillier cites cases from this circuit and around the country to support its contention that express

indemnity terms of a written contract supersede any common law right to indemnity. (Paper 14, at 12).

Plaintiff argues that the Agreement does not preempt its common law indemnity claim and that the claim is permissible as an alternative ground of relief the Agreement preserves it. (Paper 15, at 16). Specifically, Plaintiff contends that the Agreement "makes very plain" that the indemnity clauses of 12.2(b) and (c) are "*in addition to* the common law indemnity afforded to" Plaintiff. In particular, Plaintiff cites Article 12.5, which states:

> Notwithstanding anything to the contrary contained in this Agreement, the Architect shall be liable for its own negligence or willful misconduct and for the negligence or willful misconduct of its principles, employees, agents and consultants.

As the court has already observed, traditional rules of contract interpretation apply in this context. *Ulico*, 150 Md.App. at 692. Among these rules is the notion that "implied terms of a contract are utilized only in order to supply the place of a missing express term; therefore, where an express term exits, it negatives an implied inconsistent term relating to the same aspect of the contract." *Myers v. Kayhoe*, 391 Md. 188, 199 (2006); *see also Ulico*, 150 Md.App. at 691 ("When the surety and the principal have entered into an express indemnity agreement governing their rights, however, courts should not

resort to implied indemnity principles to determine those rights."). Similarly, quasi-contractual remedies such as implied indemnification are generally unavailable when a contract exists covering the same subject matter. *See Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96-98 & n.8 (2000) (discussing rule that quasi-contractual remedies are unavailable in the face of an express contract); *Franklin v. Morrison*, 350 Md. 144, 154 (1998) (stating that implied indemnification is a quasi-contractual remedy). Defendant has a clear contractual duty to indemnify Plaintiff for specifically enumerated circumstances in the contract. Any implied common law indemnification scheme would either contradict or add to these clearly defined circumstances in the contract. Therefore, because a claim for common law indemnity would be incongruent with the express provisions, the court must dismiss this claim.

Neither the last sentence of Article 12.2(c) nor Article 12.5 affects the court's analysis. Indeed, it is unclear what relevance these provisions have in this context. For example, the sentence from Article 12.2(c) that Plaintiff cites serves only to preserve the substance of Article 12.2 to the extent possible, should one part of it be determined unenforceable. Likewise, Article 12.5 does not speak to indemnity, but only

clarifies that the contract does not affect Hiller's potential liability for negligence. In short, Plaintiff cannot refashion irrelevant contractual provisions to avoid clearly established common law principles related to implied terms and quasi-contractual remedies.

## IV. Tolk's Motion to Dismiss

### A. Negligence

Plaintiff also brings a claim for negligence against Tolk. It alleges that Tolk produced design documents that contained numerous errors and omissions, failed to satisfy code requirements, and were inadequate for securing approval by permitting agencies. (Paper 1 ¶ 60). According to Plaintiff, the deficiencies included failures to design plumbing in accordance with code requirements, coordinate the MEP drawings with other portions of the work, coordinate security elements and electrical requirements, and thoroughly review shop drawings for accuracy. Plaintiff maintains that it has been damaged and has incurred additional costs associated with addressing ongoing design problems related to the HVAC system.

Tolk echoes Hillier's argument that the economic loss rule precludes Plaintiff from recovering on a tort claim. (Paper 13, at 1 & 7). Tolk argues that no claim exists because there is no privity between itself and Plaintiff.

Economic damages, in contrast to damages for personal injury or physical harm to tangible things, are "'intangible economic loss[es] resulting from the inferior quality or unfitness of the product to serve adequately the purpose for which it was purchased.'" *Lloyd v. General Motors Corp.*, 397 Md. 108, 122 (2007) (quoting *A.J. Decoster Co. v. Westinghouse*, 333 Md. 245, 249-50 (1994)).

> Such [economic] loss occurs when a purchaser suffers loss of value or use of the product, and has absorbed, or will absorb, the cost to repair or replace the product, or has lost or will lose profits resulting from the loss of use of the product. *Id.*, citing WILLIAM L. PROSSER, THE LAW OF TORTS § § 101, at 665 (4th ed. 1971); Comment, Manufacturer's Liability to Remote Purchasers for "Economic Loss" Damages--Tort or Contract?, 114 U. Pa. L.Rev. 539 (1966). Ordinarily, such damages are not allowed in tort actions. *Id.*

*Lloyd*, 397 Md. at 122. Under the economic loss rule, courts generally will not permit negligence claims that allege only economic loss. This court has previously explained the reasoning behind the economic loss rule as follows:

> "[T]he economic loss rule is intended to preserve the bedrock principle that contract damages be limited to those 'within the contemplation and control of the parties in framing their agreement.'" *City of Richmond v. Madison Mgmt. Group, Inc.*, 918 F.2d 438, 446 (4th Cir. 1990). The rule prevents a plaintiff from "pasting an ill-suited tort label on a set of facts that supports nothing more than a breach of contract

23

claim." *Id.* However, the rule is not intended to bar claims that are genuinely based in tort.

> The rule's purpose is therefore not implicated where close inspection of the plaintiff's case reveals a genuine foundation for a tort claim. In such situations, there is no risk that a plaintiff will be pursuing a tort remedy when in fact he should be confined to a contract remedy. Thus if, when the surface is scratched, it appears that the defendant has breached a duty imposed by law, not by contract, the economic loss rule should not apply.

*Id.*

*Americas Premiere Corp. v. Schwarz*, No. DKC 2008-3304, 2009 WL 2477521, at *4 (D.Md. Aug. 11, 2009).

When analyzing whether a plaintiff's tort claim can advance, the relationship between a plaintiff and a defendant matters. Indeed, the relationship between a plaintiff and a defendant can sometimes define whether and what type of duty the parties owed to one another. The Fourth Circuit has stated that:

> Under the relevant Maryland precedents, two alternative principles appear to govern whether a party to a contract owes to a non-party a duty to exercise due care in the discharge of his contractual undertakings; and, accordingly, whether the non-party injured by the negligent performance of a party's promise or undertaking may sue the party in tort. Where the party's failure to

> exercise due care creates a risk of personal injury, the principal determinant of duty is foreseeability. By contrast, where the risk created is one of economic loss only, as in the instant case, Maryland courts generally require an "intimate nexus" between the party and the non-party as a condition to the imposition of tort liability.

*Merrick v. Mercantile-Safe Deposit & Trust Co.*, 855 F.2d 1095, 1099-1100 (4th Cir. 1988) (authored by Justice Powell, sitting by designation) (citations omitted). The Court of Appeals of Maryland has likewise stated that:

> In determining whether a tort duty should be recognized in a particular context, two major considerations are: the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties. Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability. This intimate nexus is satisfied by contractual privity or its equivalent. By contrast, where the risk created is one of personal injury, no such direct relationship need be shown, and the principal determinant of duty becomes foreseeability.

*Jacques v. First Nat'l Bank of Md.*, 307 Md. 527, 534 (1986).

Tolk argues correctly that no privity exists between it and Plaintiff. Therefore, Plaintiff must satisfy the test delineated in *Council of Co-Owners of Atlantis Condo., Inc. v. Whiting-Turner Contracting Co.*, 308 Md. 18 (1986), wherein the Court of Appeals of Maryland created a limited exception to the

economic loss rule.   That case concerned builders and architects who had no contractual privity with the suing party.   The court held that:

> privity is not an absolute prerequisite to the existence of a tort duty in this type of case, and that the duty of builders and architects to use due care in the design, inspection, and construction of a building extends to those persons foreseeably subjected to the risk of personal injury because of a latent and unreasonably dangerous condition resulting from that negligence . . . . [W]here the dangerous condition is discovered before it results in injury, an action in negligence will lie for the recovery of the reasonable cost of correcting the condition.

308 Md. at 22.   To determine whether a party meets the test for a dangerous condition, a court should look to "both the nature of the damage threatened and the probability of damage occurring to determine whether the two, viewed together, exhibit a clear, serious, and unreasonable risk of death or personal injury." *Lloyd,* 397 Md. at 128.

In this case, Plaintiff's complaint does not allege facts demonstrating any unreasonable risk.   In *Whiting-Turner*, the developer "negligently obtained an occupancy permit" and people resided in the building when the danger was discovered. 308 Md. at 22-23.   In other cases applying the *Whiting-Turner* exception, identifiable classes of individuals were similarly subjected to an actual risk of harm.   *See, e.g.*, *Lloyd*, 397 Md. at 130-31

26

(allowing tort claim to proceed against car manufacturers, where car drivers had already suffered injuries and deaths); *U.S. Gypsum v. Mayor & City Council of Baltimore*, 336 Md. 145, 157-58 (Md. 1994) (permitting a tort claim for the cost of asbestos removal to end risk of harm to building occupants); *Milton Co. v. Council of Unit Owners of Bentley Place Condo.*, 121 Md.App. 100, 115-16 & n.3 (1998) (allowing tort claims where building defects, discovered after residents moved in, subjected residents to risk harm).    In contrast, the building in the present case was unoccupied while it was in its allegedly dangerous condition.    Although Plaintiff alleges that the authorities found the completed work to be "unsafe as designed," no danger existed that occupants or users would be harmed because Plaintiff remedied the problems before opening the building.    (Paper 1 ¶¶ 32, 35).    There was therefore no real probability that damage or harm would occur.    Because of this lack of probability, the situation does not fit into the exception created by the Court of Appeals. *See, e.g.*, *Morris v. Osmose Wood Preserving*, 340 Md. 519, 536 (1995) (holding that "mere possibilities are legally insufficient to allege the existence of a clear danger of death or serious personal injury" and dismissing tort claims premised on threat of injury).    Thus,

the economic loss rule applies to preclude Plaintiff's tort/negligence cause of action against Tolk.

## B. Breach of Contract

In count IV, Plaintiff asserts a breach of contract claim based on a third party beneficiary theory. It alleges that Defendants entered into the Tolk Contract ("Tolk Contract") for the direct benefit of Plaintiff, and that Tolk was aware and intended that Plaintiff would be the direct beneficiary of Tolk's design services. (Paper 1 ¶ 76).

Because of its position as a sub-contractor, Tolk's arguments to dismiss are based on its claimed lack of privity. (Paper 13, at 10-12). It argues that Plaintiff's claim that Plaintiff is a third-party beneficiary fails as a matter of law.[4] Tolk states that for Plaintiff to have standing, as a non-contractual party, the agreement between Hillier and Tolk must be clearly and definitely intended to confer a direct benefit upon Plaintiff, which in this case it does not do. (Paper 13, at 11). Rather, Tolk argues, the contract shows Hillier as the true intended beneficiary.

---

[4] Tolk claims, and Plaintiff does not contest, that Virginia law applies to its claim because Tolk and Hillier agreed that their contract would be interpreted under the law of Virginia, and Maryland has adopted the general rule that parties to a contract may choose which law will govern. (Paper 13, at 6).

Plaintiff argues that the Tolk Contract was definitely intended to confer a direct benefit on the college, and it must be analyzed as a whole. (*Id.* at 13). It argues that the entire contract is not yet before the court, although a portion of it has been attached to Tolk's motion to dismiss. Plaintiff also notes that a Tolk official signed several drawings that were presented to government permitting authorities on behalf of Plaintiff. (*Id.* at 16).

Virginia law governs the right to sue as a third party beneficiary at Section 55-22 of its state code:

> An immediate estate or interest in or the benefit of a condition respecting any estate may be taken by a person under an instrument, although he be not a party thereto; and if a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such covenant or promise. In such action the covenantor or promisor shall be permitted to make all defenses he may have, not only against the covenantee or promisee, but against such beneficiary as well.

Va. Code Ann. § 55-22. Under Virginia law, third-party beneficiaries must be intended beneficiaries of a contract; mere incidental beneficiaries have no right to enforce a contract.

*Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, Inc.*, 202 F.3d 223, 229 (4th Cir. 2000). "The third party beneficiary doctrine is subject to the limitation that the third party must show that the parties to the contract clearly and definitely intended it to confer a benefit upon him." *Id*. (citing *Professional Realty Corp. v. Bender,* 216 Va. 737 (1976)).

The question in the instant action is whether Plaintiff was an incidental or intended beneficiary, as only the latter has standing to sue. The contract in question in this case is not the Agreemeent between Hillier and Plaintiff, but the contract between Hillier and Tolk. Tolk has appended a document to its motion to dismiss that it claims is the entire contract ("Tolk Proposal"). (Paper 13, Attach. 2). This document consists of a proposal to Hillier regarding the "Lane Kirkland Center Project" and contains a "Basic Scope of Work" description, as well as many "Terms and Conditions." (Paper 13, Attach. 2). Tolk says that this Proposal constitutes the entire contract between the two Defendants. On the other hand, Plaintiff claims that the "TOLK-Hillier contract, as a whole, is not before the court." (Paper 16, at 13).

Both parties cite to *Valley Landscape Co. v. Rolland,* 218 Va. 257 (1977), to support their opposing views. In that case, a university ("ODU") sued a landscaping contractor ("Valley") to

recover for breach of contract. *Id*. at 258. After Valley terminated its contract, ODU sued to recover damages. Valley then sued Rolland, the landscape architect, as a third-party defendant, based on the theory that it was a third-party beneficiary of the contract between Rolland and ODU. *Id*.

The Supreme Court of Virginia held that a "clear intent to benefit the third person must appear to enable him to sue on the contract; incidental beneficiaries cannot maintain an action thereon" and that under the test Valley did not qualify as a third party beneficiary. *Id*. at 260. The Court found that it was "not sufficient that Valley would be incidentally benefited by a proper performance of duties on the part of [Rolland]." *Id*. at 262. The facts of the instant case are clearly distinguishable from *Valley*. *Valley* presented a case where a contractor sought to make itself a party to the contract between the owner and the architect. In this case, the owner (Plaintiff) is seeking to prove that it is an intended beneficiary to a contract between a contractor and subcontractor. The case is instructive, however, regarding the high bar that Virginia courts impose on parties to prove their status as third party beneficiaries.

Plaintiff points mainly to behavior outside of the contract to show that it was the intended beneficiary. For instance, it

notes that Tolk was designated as a designer on MEP drawings that were issued to bidders. (Paper 16, at 16; Paper 16, Attach. 1). Virginia courts have, however, indicated that the "four corners of a contract evidence whether contracting parties clearly and definitely intended to directly benefit a third party." *Radosevic v. Va. Intermont Coll.*, 651 F.Supp. 1037, 1039 (W.D.Va. 1987).

As Plaintiff points out, the Tolk Proposal explicitly mentions the "Owner" and that it will coordinate with the Owner's other consultants. (*Id.* at 5(g)(1)). This reference, however, is only in regard to noting that Tolk will be working with other contractors on the project ("Owner's specialty consultants such as lighting, acoustical," etc.). Other than the above example, the "Owner" (Plaintiff) is not mentioned in the Tolk Proposal. The Tolk Proposal also contains a provision limiting the liability of Tolk "in the aggregate of the amount of fees paid by Client to TOLK." (Paper 13, Attach. 2 ¶ 7(i)). And, whenever the Contract references the "Client," it clearly means Hillier.

Given the lack of reference to Plaintiff in the Tolk Proposal, it appears that Plaintiff was only an incidental beneficiary of Tolk's work, and that Tolk's client was Hillier. Such an outcome is expected, given that standard contractor-

subcontractor contracts like the one seen here traditionally create *incidental* third-party beneficiaries. *See, e.g.*, Restatement (Second) of Contracts § 302(1) (1981), cmt. e, illus. 19 ("A contracts to erect a building for C. B then contracts with A to supply lumber needed for the building. C is an incidental beneficiary of B's promise, and B is an incidental beneficiary of C's promise to pay A for the building."); *see also BIS Computer Solutions, Inc. v. City of Richmond, Va.*, 122 F.App'x. 608, 611 (4th Cir. 2005) (noting that Section 55-22 and "the relevant Virginia common law" are consistent with the Restatement view of third-party beneficiaries). Therefore, count IV will be dismissed.

## V. Conclusion

For the foregoing reasons, Defendant Hillier's motion to dismiss will be granted in part and denied in part and Defendant Tolk's motion will be granted. A separate Order will follow.


/s/
_____
DEBORAH K. CHASANOW
United States District Judge